UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KAITLIN J.,                                          Case No. 6:24-cv-02107-AR

             Plaintiff,                     OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

      Kaitlin J. challenges the Administrative Law Judge's denial of Social Security benefits.

She argues that the ALJ failed at step three to find plaintiff disabled as meeting or equaling

Listings 11.02 and 14.09; failed to adequately evaluate lay witness testimony; failed to provide

clear and convincing reasons for not finding her subjective testimony credible; and failed at step

five to provide a complete hypothetical to the vocational expert. (Pl.'s Br. at 6-19.) As explained

below, as required by the standard of review, the Commissioner's decision is AFFIRMED. *See*

42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (the district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record).

(A)    *Step Three – Listing 14.09.* The ALJ determined that plaintiff's physical impairments did not meet or medically equal the criteria of Listing 14.09 for inflammatory arthritis. (Tr. 140.) The ALJ explained:

> [T]here is no documented need for an assistive device, and there is no evidence [of] inflammation or deformity in one o[r] more major joints with involvement of two or more organs/body systems or two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). The undersigned notes that the records generally show no notable joint abnormalities on examination other than recent findings of trigger fingers on the right.

(Tr. 140.) Plaintiff does not challenge the ALJ's finding that the record does not show a need for an assistive device (Listing 14.09(A)) but challenges the ALJ's finding that there is no evidence of inflammation in one or more major joints and asserts that the ALJ's own citations are consistent with meeting either Listing 14.09(B) or (D). She also contends that the record documents severe fatigue and malaise, both of which would match the requirements of Listing 14.09(B)(2). (*See* Pl.'s Br. at 10, citing Tr. 434, 439, 2069.)

As to Listing 14.09(B), the ALJ correctly analyzed plaintiff's medical record against the requirements of the Listings: Listing 14.09(B) first requires inflammation or deformity in one or more major joints of an upper or a lower extremity with (1) involvement of two or more organs [or] body systems with one of the organs [or] body systems involved to at least a moderate level of severity *and* (2) at least two of the constitutional symptoms or signs (severe fatigue, fever,

Page 2 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

malaise, or involuntary weight loss). The record supports the ALJ's finding that the second requirement was not met.

The evidence on which plaintiff relies does not show otherwise. Although plaintiff has joint swelling and trigger fingers, and this body system is at least "moderate" in severity, plaintiff fails to show a second body system that is at least moderate in severity, which Listing 14.09(B) requires. And the regulations clarify that such involvement must be a manifestation of the immune system disorder itself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(D)(6). Plaintiff's argument that her musculoskeletal, neurologic, mental, and immune systems are all affected by her rheumatoid arthritis and that each system equates to at least a moderate level of severity is unaccompanied by medical evidence. (*See* Pl.'s Br. at 10.) The only other body system she points to with accompanying evidence is carpal tunnel. Yet her providers classify this impairment as "mild[,]" which fails to meet the requirements of Listing 14.09(B). (*See* Pl.'s Br. at 9-10, *but see* Tr. 1747, 1752, 1814, 2226.) Accordingly, the ALJ did not err in finding that plaintiff did not meet listing 14.09(B).

As to Listing 14.09(D), plaintiff asserts that the ALJ did not consider whether she suffers a marked limitation under in either (1) activities of daily living; (2) maintaining social functioning; or (3) completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. (Pl.'s Br. at 10-11.) The plaintiff bears the burden to "present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan, 493 U.S. at 531.* Here, the plaintiff must show "[r]epeated manifestations of inflammatory arthritis, with at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" and limitation of one of (1) activities of daily living (ADLs), (2)

Page 3 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

maintaining social functioning, or (3) completing tasks in a timely manner "due to deficiencies in concentration, persistence, and pace" at the marked level. 20 C.F.R., Part 404, Subpt. P, App. 1 § 14.09(D) (emphasis added). "Marked limitation means that the signs and symptoms of your immune system disorder interfere seriously with your ability to function. Although we do not require the use of such a scale, 'marked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." *Id*. at § 14.00(I)(5).

Plaintiff asserts that the ALJ did not consider her mental impairments *in combination* with her RA, but the burden is on plaintiff present medical evidence that she meets or equals a Listing, not the ALJ. (*See* Pl.'s Br. at 11.); *see also Sullivan*, 493 U.S. at 532. Plaintiff points only to her own hearing testimony to argue that she suffers marked limitations in her ADLs, social functioning, and completing tasks in a timely manner. (*See* Pl.'s Br. at 11, citing Tr. 38-60.) Looking to the decision, the ALJ made specific findings that plaintiff has mild and moderate limitations in all four areas of mental functioning. (*See* Tr. 140-41.) The ALJ properly evaluated plaintiff's ability to "adapt and manage oneself[,]" citing evidence showing she was the primary caregiver for her three-year-old son, that she prepared meals daily, performed household chores (such as cleaning, doing laundry, vacuuming, and doing dishes), went places by walking, driving, or riding in a car, shopped in stores weekly, and managed her own finances. (Tr. 141, citing Tr. 335-37, 2025.) The ALJ also evaluated plaintiff's ability to concentrate or maintain pace, concluding that she has a "moderate" limitation because on examination she "displayed some difficulty with mental calculation [or] concentration" in 2020, but displayed no issues with concentration in 2021, nor do her treatment notes indicate issues with concentration. (Tr. 141,

Page 4 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

citing Tr. 559, 1737.) Plaintiff fails to grapple with this evidence or show that the ALJ's findings about the requisite functional areas are unsupported by substantial evidence. *See Moreno v. Comm'r of Soc. Sec.*, No. 1:19-CV-01470-SAB, 2020 WL 6526246, at \*23 (E.D. Cal. Nov. 5, 2020) ("the Court agrees with Defendant that the record did not show Plaintiff had 'marked' limitations in any pertinent area, and that the ALJ properly found Plaintiff had only 'mild' limitations of daily living, maintaining social functioning, and in concentration, persistence, or pace.") (collecting cases); *Christopher S. v. Comm'r of Soc. Sec.*, No. C24-5431-MLP, 2024 WL 4605464, at \*4 (W.D. Wash. Oct. 29, 2024) ("Moreover, Plaintiff fails to provide any argument or evidence that his limitations rise to the 'marked' level required by Listing 14.09(D). As a result, the ALJ did not err in finding that Plaintiff did not meet a listed impairment.").

For the foregoing reasons, the ALJ adequately discussed and evaluated evidence to support the finding that plaintiff's impairments or combination of impairments did not meet or equal Listing 14.09. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

**(B)** ***Step 3—Listing 11.02.*** As to Listing 11.02 for epilepsy, plaintiff argues that the ALJ committed "clear legal error" by failing to call a medical expert to testify. (*See* Pl.'s Br. at 11.) But the ALJ is not required to call a medical expert to testify when determining whether an impairment or combination thereof medically equals a Listing impairment. If the ALJ finds that the evidence does not reasonably support a finding of medical equivalence, the regulations "do not require the adjudicator to obtain [medical expert] evidence or medical support staff input[.]" SSR 17-2p, 2017 WL 3928306, at \*4 (Mar. 27, 2017). Such is the case here, as the ALJ stated:

> As for her headaches, the undersigned finds that they do not rise to listing level. There is no medical expert testimony to establish that this disorder medically equals Listing 11.02. The undersigned finds none is necessary because the record

does not establish a primary headache disorder rising to listing level severity. In August 2020, it was noted that her headaches were managed with medication (propranolol). In October 2020, she reported she has not been taking this medication as much lately because her headaches had not been as bad. She did report some increased migraines in June 2022. An examination was notable for suboccipital muscle tension bilaterally. Neurological examination was "reassuring," and appointment with neurology was noted as already scheduled. She reported that she would like to try Botox injections. She testified that she has since had a consultation with the neurologist but otherwise treatment has continued to be medication management with her primary care provider. She has not had emergency treatment for migraines. Overall, the undersigned finds these records do not indicate a primary headache disorder of listing-level severity.

(Tr. 140, internal citations omitted.)

Based on that analysis, the ALJ found it unnecessary to call a medical expert because the record did not support that her headache disorder rose to "listing level severity." (Tr. 140.) As discussed below, the ALJ's findings are supported by substantial evidence.

ALJs analyze headache disorder claims under Listing 11.02. *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). To equal Listing 11.02(B), a claimant must have headache events "at least once a week for at least [three] consecutive months despite adherence to prescribed treatment." *Id*. at *7. To determine whether a claimant's symptoms are "equal in severity and duration to the criteria in 11.02(B)," the ALJ must consider:

A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

Page 6 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

The record demonstrates that plaintiff complained to providers about headaches and migraines and engaged in treatment with medication, with a desire to try Botox. (Tr. 2025-26.) The medical record documents that plaintiff's migraines responded to medication, were "not intractable," and that propranolol provided relief. (Tr. 553, 530, 532, 856, 1776, 1872, 2022, 2025, 2027.) The only medical opinions of record addressing this impairment—the state agency consulting sources—found that the medical record did not establish presumptive disability at step three. (Tr. 80, 100, 116, 119 ("Headaches as MDI are not established by SSR 19-4p criteria"), 126, 130.) The ALJ explicitly relied on that evidence in evaluating plaintiff's migraines under Listing 11.02 to find that plaintiff was not presumptively disabled (Tr. 140, 146), and plaintiff does not identify record evidence that undermines the ALJ's finding aside from her own hearing testimony or her subjective reports to providers. (*See* Pl.'s Br. at 12-13, citing Tr. 46-59, 411, 413-14, 418, 1780, 2028-29, 2025-27, 2020.) As discussed above, plaintiff's subjective reports are insufficient to establish equivalency at step three, especially where they do not document the requisite signs and symptoms. SSR 19-4p, 2019 WL 4169635; *Tackett*, 180 F.3d at 1100; *see also Mariah C. v. Kijakazi*, No. 6:22-CV-614-SI, 2023 WL 5827681, at *4 (D. Or. Sept. 8, 2023) (self-reports to medical providers "do not conclusively show that her headaches meet the criteria of Listing 11.02."). Nor does Plaintiff identify evidence that the ALJ overlooked that medically documents the frequency and severity of her headaches to meet the high bar of Listing 11.02(B). (*See* Pl.'s Br. at 12-13.) As such, the ALJ did err at step three.

**(C)**    ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ "offered little more than vague assertions that the claimant's allegations are unsupported by the objective medical

evidence," improperly rejected plaintiff's childcare activities as an activity of daily living, and failed to consider the steps plaintiff must take to alleviate her symptoms. (Pl.'s Br. at 15-19.)

*Inconsistency with Objective Medical Evidence*. Plaintiff's contention that the ALJ's discussion of the medical evidence was inadequate is not well taken. The ALJ considered plaintiff's testimony about her joint pain, swelling, edema, and headaches that prevent her from working (Tr. 142-43, citing Tr. 30-69, 333-340) and acknowledged parts of the record consistent with that testimony (Tr. 143-44, citing Tr. 472-73, 1747, 2026, 2036, 2039), but nevertheless was unpersuaded, citing a physical examination that was "within normal limits" and that an ultrasound of the ankle was "negative for abnormalities" and plaintiff's May 2021 consultative examination where she exhibited normal gait with no balance issues, as well as demonstrating "no joint swelling, erythema, effusion, tenderness, or deformity in her joints, including the fingers" as more evidence contradicting her joint pain allegations. (Tr. 143, citing Tr. 465, 496, 1737-38.) The ALJ also pointed to evidence that plaintiff's "hand could be fully extended, she could make a fist, her fingers could be opposed, and she could pinch, grasp, and manipulate small and large objects without difficulty" and that her "range of motion was within normal limits, including in her fingers." (Tr. 143, citing Tr. 1738-40.) Also found relevant by the ALJ were clinical observations from May 2022 where plaintiff "exhibited normal upper extremity range of motion with 'no effusions, warmth, or erythema, including in the hands[,]'" that her "[g]rip strength was intact[,]" and that she "could make a closed fist and claw formation." (Tr. 143, citing Tr. 2036, 2039.) And the ALJ highlighted that the only MRI on record was "normal[,]" and that there has "not been emergency visits for [the] treatment of migraines" for two years. (Tr. 144-45, citing Tr. 421.) Ultimately, the ALJ concluded that "the limitation as to no

work in loud noise, as well as [the] limitation [in] task complexity, adequately accommodates" her headaches and that "records indicate she is able to frequently use the dominant right upper extremity for gross handling and fine fingering manipulation." (Tr. 144-45.)

Plaintiff challenges the ALJ's findings—asserting that the ALJ "understate[d] the remarkable findings in the treatment record" and "overlooked evidence," did not explain how she is "capable of frequent handling and fingering given the record evidence and her persistent limitation in using her hands," and failed to evaluate the frequency of her headaches. (Pl.'s Br. at 17-18). As the court explains, the ALJ properly considered the lack of objective medical evidence as one factor in assessing plaintiff's credibility. That finding is supported by substantial evidence, for two reasons.

First, it was reasonable for the ALJ to conclude that plaintiff could manipulate with her dominant hand because much of the objective testing and observation tied to her upper extremities was normal, particularly regarding the condition of her joints. The ALJ's finding that as of June 2023, an inspection of plaintiff's hands "showed no swelling, warmth, or erythema[,]" and that in October 2023, "all joints were normal without synovitis" which undercuts plaintiff's testimony that she can "barely use" her hands at all and that they "just do[n't] want to work anymore." (*Compare* Tr. 144, citing Tr. 2222, 2468 *with* Tr. 38-39.) Second, it was reasonable for the ALJ to conclude that plaintiff's headaches were not as severe as alleged based on her own reports to providers that her headaches had improved and that they "had not been as bad[,]" thus prompting her to reduce her medication. (Tr. 145, citing Tr. 418, 529.)

Plaintiff cites one page of the record that highlights "diminished reflexes" and generally references, without citation, to "remarkable findings of her wrists, hands, and fingers . . . with

Page 9 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

persistent stiffness, pain, numbness, swelling, and fatigue[.]" (Pl.'s Br. at 17.) She also generally points to "the frequency of [her] migraine headaches" to assert error with the ALJ's interpretation of the evidence. But plaintiff's generalized references to abnormal findings and clinical observations does not engage with the ALJ's reasoning. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds*, 20 C.F.R. § 404.1520(a) (burden of showing harmful error is on party attacking an agency's determination). For example, plaintiff does not address the ALJ's reasoning here, particularly when the ALJ found that her "hand could be fully extended, she could make a fist, her fingers could be opposed, and she could pinch, grasp, and manipulate small and large objects without difficulty" and that her "range of motion was within normal limits, including in her fingers." (Tr. 143, citing Tr. 1738-40.) Plaintiff also does not identify any record evidence refuting the ALJ's determination regarding plaintiff's headaches. (*See* Pl.'s Br. at 18.)

The ALJ's interpretation is reasonable and must be upheld. *Thomas*, 278 F.3d at 954 (where evidence susceptible to more than one interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld). Therefore, the ALJ did not err in discounting plaintiff's subjective symptom testimony as inconsistent with the objective medical evidence.

*Efforts to Alleviate Symptoms*. Plaintiff contends that the ALJ "failed to consider the steps [plaintiff] must take to alleviate her symptoms": she has difficulty using her hands for repetitive motions, needs to take a break every 30 minutes of standing, and needs to nap and elevate her legs throughout the day. (*See generally* Pl.'s Br. at 18.) But the court is unpersuaded by plaintiff's reliance on *Glanden v. Kijakazi*, 86 F.4th 838, 845 (9th Cir. 2023), for the contention that the ALJ erred by failing to consider her coping mechanisms other than professional care.

In *Glanden*, the Ninth Circuit held that the ALJ's characterization of the plaintiff as "overly selective about his preferred form of care" was contrary to the record that showed the plaintiff's lack of access to appropriate care and having to turn when laying down and avoiding people to manage his pain in the absence of treatment that *he could not afford*. *Id*. Plaintiff here, however, does not contend that she lacks access to care or that she cannot afford care specific to her impairments. Also, unlike *Glanden*, plaintiff actively sought care throughout the relevant period and found medications that reduced her most extreme symptoms. And contrary to plaintiff's contention that the ALJ failed to address the methods she uses to alleviate her symptoms, the ALJ did discuss her need to sit after standing for 30 minutes, that she has to lie down throughout the day, and that she cannot write or type for more than a few minutes. (*See* Tr. 142.) As discussed above, the ALJ provided several reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony. (*See generally* Tr. 142-45.)

*Activities of Daily Living*. The ALJ found that plaintiff was "able to engage in a wide variety of daily activities, including care of a young child" and that the normal examinations of her hands paired with her being the primary caregiver for her young child "indicate[s] she is able to frequently use the dominant right upper extremity for gross handling and fine fingering manipulation." (Tr. 144, citing Tr. 337, 2025.) The ALJ also noted that plaintiff regularly engages in "cooking, cleaning, childcare, and laundry[,]" goes "out alone and driv[es,]" manages her own finances, and at one point provided care to her mother who suffers from Multiple Sclerosis (MS). (Tr. 141, citing Tr. 2025, 334.)

Plaintiff takes issue with the ALJ's finding because she did not "identify specific details regarding her childcare activities that conflict with her disabling allegations." (Pl.'s Br. at 17)

Page 11 – OPINION AND ORDER
*Kaitlin J. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02107-AR

citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). She also points out that she has "multiple family members" who assist with childcare when she has severe migraines. (Pl.'s Br. at 17.) Regardless of who may or may not help plaintiff with childcare, plaintiff still describes herself as her child's primary caregiver and listed several activities that she does with her child every day. (*See* Tr. 334, 336-37); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding taking care of children and maintaining a household to be a clear and convincing reason to discredit symptom testimony). Despite plaintiff's physical impairments, she would make her son breakfast, bathe and clothe him, make him lunch, play with him, take him to the park, "follow him everywhere[,]" and put him to bed daily. (*See* Tr. 334.) Thus, the ALJ could reasonably find that plaintiff's role in caring for her young child was inconsistent with her testimony that she, on the whole, can hardly use her hands throughout the day. *See Molina*, 674 F.3d at 1112-13 (even where a claimant's activities "suggest some difficulty functioning, they may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment" ). For those reasons, plaintiff's argument is unavailing, and she has failed to show harmful error in the ALJ's analysis.

**(D)**    ***Lay Witness Testimony***. Plaintiff also challenges the ALJ's evaluation of the lay witness testimony from her father and supervisor, Douglas J., and other family member, Debby E. (Pl.'s Br. at 13-15.) Douglas J. wrote a letter stating that in addition to plaintiff's struggles to use her hands at work, she has migraines, severe anxiety, and heart flutters that exacerbate her anxiety. (Tr. 407.) Debby E. likewise wrote that plaintiff has trouble using her hands for anything repetitive or that involves strength, and has anxiety, and experiences severe migraines, for which she takes medication that exacerbates her anxiety and gives her heart palpitations. (Tr. 408.)

Plaintiff argues that the ALJ's findings are insufficient, as her "general conclusion fails to provide any germane reasoning to reject the specific written testimony of [plaintiff]'s family members." (Pl.'s Br. at 15.) The court disagrees. As the ALJ concluded, the two lay witness statements at issue generally repeat the same statements made by plaintiff about the severity of her rheumatoid arthritis and migraines. (*See* Tr. 146, 407-08.) Because the ALJ provided clear and convincing reasons for discounting plaintiff's subjective symptom testimony, those same reasons constitute germane grounds for discounting the lay witness statements. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming that if an ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints, and a lay witness's testimony is similar to those complaints, it follows that the ALJ has provided germane reasons for rejecting the lay witness testimony); *Jacob D. v. Comm'r, Soc. Sec. Admin.*, No. 6:24-CV-01191-HL, 2025 WL 1779181 (D. Or. June 27, 2025) ("[B]ecause the ALJ noted how [the lay witness] testimony 'generally relies on the claimant's subjective complaints," and the ALJ provided clear and convincing reasons to discount plaintiff's subjective complaints, the ALJ gave germane reasons for discounting [the lay witness's] testimony."). The ALJ did not err.

**(E)    *Step Five*.** Plaintiff argues that the ALJ erred at step five in failing to include additional limitations that she contends are well supported when posing the hypothetical questions to the vocational expert (VE). (Pl.'s Br. at 19.) At bottom, plaintiff's argument is that the ALJ erred in all the ways discussed above. Because the ALJ did not err, the RFC and resulting hypothetical contained all the limitations credited by the ALJ and supported by substantial evidence in the record; there is no step five error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The

hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

DATED: April 21, 2026.

_____
JEFF ARMISTEAD
United States Magistrate Judge